FILED

FEB - 2 2010

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | No. CR 10-043 D |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Violations: 18 U.S.C. § 1341 |
| -vs- | ) | 18 U.S.C. § 2 |
| | ) | 18 U.S.C. § 1957(a) |
| MEHRAN KORANKI, | ) | 18 U.S.C. § 981(a)(1)(C) |
| | ) | 28 U.S.C. § 2461(c) |
| Defendant. | ) | 18 U.S.C. § 982(a)(1) |

## INDICTMENT

The Federal Grand Jury charges:

### Introduction

At all times relevant to this Indictment:

1. Nortel Networks Inc. ("Nortel") was a Delaware corporation engaged in the sale and service of computer networking systems and parts. Its principal place of business in the United States was Richardson, Texas.

2. SMC ELECTRONICS USA LLC ("SMC") was an Oklahoma Limited Liability Company with its principal place of business at 7250 Northwest Expressway in Oklahoma City, Oklahoma. SMC was in the business of maintaining, repairing, and selling computer network components manufactured by various firms, including Nortel. It employed approximately five people.

3. ALLIED SOLUTION TECHNICAL CENTER LLC ("ASTC") was an Oklahoma Limited Liability Company with its principal place of business in Oklahoma City, Oklahoma. Before the events described in this Indictment, ASTC sought to conduct computer training sessions for a profit and operated out of the same building as SMC.

4. Defendant **MEHRAN KORANKI** owned and controlled SMC and ASTC. He resided in Yukon, Oklahoma.

### Factual Background

5. During 2005 and 2006, Nortel offered a warranty program to customers who possessed or used Nortel computer networking equipment. The terms of this warranty program were set out in a Professional Service Agreement. Nortel charged a fee for this warranty program based on the size of the customer's computer network.

6. Under this warranty program, customers who discovered a defective or malfunctioning Nortel part could request Nortel to send a replacement part. Nortel honored these requests and promptly shipped replacement parts by Federal Express from Nortel facilities, including a Nortel facility in Memphis, Tennessee. Upon receiving the replacement part, Nortel required the customer to return the defective or malfunctioning part to Nortel. Except for the cost of the warranty program generally, Nortel did not charge customers for replacement parts. The Professional Service

Agreement provided that maintenance services under the warranty program, including the replacement of malfunctioning Nortel parts, would be for the customer's own internal use and not for resale.

7. During 2005 and 2006, neither SMC nor ASTC possessed or used a Nortel computer network. Nevertheless, SMC and ASTC were parties to two separate Professional Service Agreements with Nortel.

## COUNTS 1-47 – MAIL FRAUD

### The Scheme to Defraud

8. The Federal Grand Jury incorporates by reference paragraphs 1 through 7.

9. Beginning no later than February of 2005 and continuing through about June of 2006, **KORANKI** knowingly devised, intended to devise, and executed a scheme and artifice to defraud Nortel in a material manner.

10. It was part of the scheme and artifice to defraud that SMC and ASTC, at the direction of **KORANKI**, represented falsely to Nortel that they owned and operated computer networks composed of Nortel components. These false representations caused Nortel to enter into Professional Service Agreements with SMC and ASTC.

11. It was further part of the scheme and artifice to defraud that SMC and ASTC, at the direction of **KORANKI**, would contact Nortel and falsely report

malfunctions of various Nortel parts in the computer networks of SMC and ASTC. In some instances SMC or ASTC had obtained a Nortel part corresponding to the supposedly malfunctioning part, but in many instances neither SMC nor ASTC possessed the Nortel part that it reported as malfunctioning.

12. It was further part of the scheme and artifice to defraud that upon receipt of replacement parts from Nortel, SMC and ASTC, at the direction of **KORANKI**, would sell the replacement parts to third parties and retain the proceeds for their own benefit.

13. It was further part of the scheme and artifice to defraud that SMC and ASTC, at the direction of **KORANKI**, would represent falsely to Nortel that they had installed replacement parts in their own computer networks.

14. It was further part of the scheme and artifice to defraud that SMC and ASTC, at the direction of **KORANKI**, would purchase used Nortel parts from third parties and send them to Nortel under the pretense that these parts were components of their own computer networks. In many instances, however, SMC and ASTC failed to send any return parts to Nortel corresponding to the requested replacement parts.

15. It was further part of the scheme and artifice to defraud that after Nortel canceled SMC's Professional Services Agreement on approximately April 3, 2006, **KORANKI** caused a former employee of SMC to order replacement parts from Nortel under the fictitious name "Bob Tompkins" through ASTC's Professional

Services Agreement. In order to conceal the fact that SMC would actually be receiving these replacement parts, **KORANKI** instructed the former employee to request that Nortel send the parts to the employee's residence in Edmond, Oklahoma, and then to transport the parts to the offices of SMC.

### Shipments in Furtherance of the Fraud

16. The Federal Grand Jury incorporates by reference paragraphs 1 through 7 and 9 through 15.

17. On about the dates listed below, in the Western District of Oklahoma and elsewhere,

---------------------------------- **MEHRAN KORANKI**, ----------------------------------

for the purpose of executing and attempting to execute a scheme and artifice to defraud in a material manner, knowingly caused to be sent by Federal Express, a commercial interstate carrier, the following Nortel parts from locations outside of Oklahoma to the offices of SMC in Oklahoma City:

| Count | Date of Shipment | Nortel Part Number | Part Serial Number | Retail Price |
|---|---|---|---|---|
| 1 | Feb. 18, 2005 | DS1404001 | SSO2BK04PG | $7,300.00 |
| 2 | Mar. 30, 2005 | DS1404002 | SSCHE603CW | $6,700.00 |
| 3 | Mar. 30, 2005 | DS1404002 | SSCHE6056B | $6,700.00 |
| 4 | Apr. 1, 2005 | DS1404002 | SSMCC1042Q | $6,700.00 |
| 5 | Apr. 1, 2005 | DS1404036 | SSCHF50AVR | $14,250.00 |

| 6  | Apr. 6, 2005   | DS1404011 | SSCHN50510 | $24,995.00 |
|----|----------------|-----------|------------|------------|
| 7  | May 5, 2005    | DS1404036 | SSCHF50AB2 | $14,250.00 |
| 8  | May 6, 2005    | DS1404036 | SSCHF5084R | $14,250.00 |
| 9  | May 10, 2005   | DS1404036 | SSPNF50HYM | $14,250.00 |
| 10 | July 22, 2005  | DM1401092 | SSCMF10BVG | $999.00    |
| 11 | July 23, 2005  | DS1404002 | SS02BL03KD | $6,700.00  |
| 12 | July 26, 2005  | DM1401111 | SSCMF30GJP | $277.11    |
| 13 | Aug. 2, 2005   | PB2002005 | SSCPV104PP | $853.00    |
| 14 | Aug. 11, 2005  | DS1404038 | SSPNF80R4Y | $14,995.00 |
| 15 | Aug. 12, 2005  | DS1404038 | SSPNF80RM8 | $14,995.00 |
| 16 | Aug. 25, 2005  | DS1404065 | SSPN1X01TL | $19,995.00 |
| 17 | Aug. 25, 2005  | DS1404065 | SSPN1X0838 | $19,995.00 |
| 18 | Aug. 25, 2005  | DS1404092 | SSPN3K01AS | $19,995.00 |
| 19 | Aug. 25, 2005  | DS1404092 | SSPN3K01GF | $19,995.00 |
| 20 | Aug. 26, 2005  | DS1404065 | SSPN1X0892 | $19,995.00 |
| 21 | Aug. 26, 2005  | DS1404065 | SSPN1X08CH | $19,995.00 |
| 22 | Aug. 30, 2005  | DS1404035 | SSCHG90PAL | $15,995.00 |
| 23 | Sept. 16, 2005 | DS1404090 | SSPN2F01S6 | $14,995.00 |
| 24 | Sept. 20, 2005 | DS1404065 | SSPN1X0842 | $19,995.00 |
| 25 | Sept. 22, 2005 | DS1404065 | SSPN1X082K | $19,995.00 |
| 26 | Sept. 24, 2005 | DS1404090 | SSPN2F0CP9 | $14,995.00 |
| 27 | Sept. 27, 2005 | DS1404065 | SSPN1X05EZ | $19,995.00 |
| 28 | Sept. 27, 2005 | DS1404037 | SSPNG505GD | $19,995.00 |
| 29 | Sept. 29, 2005 | DS1404065 | SSPN1X03D7 | $19,995.00 |
| 30 | Sept. 30, 2005 | DS1404065 | SSPN1X03QT | $19,995.00 |
| 31 | Sept. 30, 2005 | DS1404065 | SSPN1X04DP | $19,995.00 |

| 32 | Oct. 5, 2005 | DS1404065 | SSPN1X03EZ | $19,995.00 |
| 33 | Oct. 5, 2005 | DS1404038 | SSPNF80V48 | $14,995.00 |
| 34 | Oct. 13, 2005 | DS1404038 | SSPNF80MF8 | $14,995.00 |
| 35 | Oct. 14, 2005 | DS1404065 | SSPN1X0716 | $19,995.00 |
| 36 | Oct. 14, 2005 | DS1404065 | SSPN1X0856 | $19,995.00 |
| 37 | Oct. 14, 2005 | DS1404065 | SSPN1X094P | $19,995.00 |
| 38 | Nov. 3, 2005 | DS1404011 | SSPNN509KK | $24,995.00 |
| 39 | Nov. 3, 2005 | DS1404011 | SSPNN50AP7 | $24,995.00 |
| 40 | Nov. 12, 2005 | DS1404011 | SSCHN503FN | $24,995.00 |
| 41 | Dec. 6, 2005 | DS1404038 | SSCHF800MK | $14,995.00 |
| 42 | Dec. 9, 2005 | DS1404038 | SSCHF80E0G | $14,995.00 |
| 43 | Dec. 12, 2005 | DS1404034 | SSPNS3087P | $16,995.00 |
| 44 | Jan. 19, 2006 | DS1404038 | SSPNF8101B | $14,995.00 |
| 45 | Jan. 19, 2006 | DS1404038 | SSPNF81048 | $14,995.00 |
| 46 | Mar. 25, 2006 | DS1404090 | SSPNF20798 | $14,995.00 |
| 47 | Mar. 28, 2006 | DS1404024 | SSPNL50KMM | $15,495.00 |

All in violation of Title 18, United States Code, Section 1341, and Title 18, United States Code, Section 2.

### COUNT 48 – MAIL FRAUD

18. The Federal Grand Jury incorporates by reference paragraphs 1 through 7 and 9 through 15.

19. On about May 18, 2006, in the Western District of Oklahoma and elsewhere,

--------------------------------- **MEHRAN KORANKI,** -------------------------------

7

for the purpose of executing and attempting to execute a scheme and artifice to defraud in a material manner, knowingly caused to be sent by Federal Express, a commercial interstate carrier, Nortel part number DS1404038, serial number SSPNF810AT, with a retail value of $14,995.00, from Memphis, Tennessee, to ASTC at the Edmond, Oklahoma, residential address of a former employee of SMC.

**All in violation of Title 18, United States Code, Section 1341, and Title 18, United States Code, Section 2.**

## COUNTS 49-53 – MONEY LAUNDERING

20. The Federal Grand Jury incorporates by reference paragraphs 1 through 7, 9 through 15, 17, and 19.

21. At all relevant times, SMC maintained account number XXXXXX5399 at BancFirst, which was insured by the Federal Deposit Insurance Corporation.

22. On about the dates indicated below, in the Western District of Oklahoma and elsewhere,

------------------------------------ **MEHRAN KORANKI** ------------------------------------

knowingly engaged in a monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000. In particular, **KORANKI** caused the following checks, in the amounts indicated below, to be deposited into the account of SMC at BancFirst, account number XXXXXX5399, after more than $10,000 of each deposit amount had been derived from selling to the payors indicated below Nortel parts that had been obtained

8

through a specified unlawful activity, that is, mail fraud, a violation of Title 18, United States Code, Section 1341:

| COUNT | DATE | AMOUNT | PAYOR |
|---|---|---|---|
| 49 | July 10, 2005 | $12,710.00 | Netria Corporation |
| 50 | Sept. 2, 2005 | $26,800.00 | Mulligan JR Technologies, Inc. |
| 51 | Oct. 3, 2005 | $12,225.00 | Get It New Corporation |
| 52 | Oct. 17, 2005 | $14,725.00 | Get It New Corporation |
| 53 | Feb. 21, 2006 | $10,350.00 | Netria Corporation |

**All in violation of Title 18, United States Code, Section 1957(a), and Title 18, United States Code, Section 2.**

## FORFEITURE ALLEGATIONS

23.  The Federal Grand Jury incorporates by reference paragraphs 1 through 7, 9 through 15, 17, and 19 for the purpose of alleging forfeitures to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

24.  Upon conviction of any of the offenses alleged in Counts 1 through 48 of this Indictment, Defendant **MEHRAN KORANKI** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property constituting or derived from proceeds traceable to the mail fraud scheme alleged in paragraphs 8 through 15, including but not limited to the amounts set out in Counts 1 through 48, which

includes:

> A sum of money equal to $6,260,157.95, which represents the proceeds obtained as a result of the offense, mail fraud, in violation of Title 18, United States Code, Section 1341.

25. Upon conviction of any of the offenses alleged in Counts 49 through 53 of this Indictment, Defendant **MEHRAN KORANKI** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property, including but not limited to 7250 Northwest Expressway, Oklahoma City, Oklahoma, described more particularly as:

> A parcel of land lying in the East Half (E/2) of Section THIRTY-TWO (32), Township THIRTEEN (13) North, Range FOUR (4) West of the Indian Meridian, in Oklahoma County, Oklahoma, and more particularly described as follows: COMMENCING at the Southeast Corner of said Section 32; Thence North 0°07'59" West along the East Line of said Section 32, a distance of 2584.10 feet; Thence North 90°00'00" West a distance of 787.26 feet to the point of beginning; Thence continuing North 90°00'00" West a distance of 487.50 feet; Thence North 0°12'18" East a distance of 159.00 feet; Thence North 90°00'00" East a distance of 74.00 feet; Then North 0°00'00" East a distance of 18.00 feet; Thence North 90°00'00" East a distance of 211.85 feet; Thence South 61°40'10" East a distance of 228.44 feet; Thence South 0°00'00" East a distance of 68.59 feet to the point of beginning, LESS AND EXCEPT any interest in and to all of the oil, gas and mineral rights and subject to easements, restrictive covenants and rights of way of record.

26. If, as a result of any act or omission of the defendants, any of the property described above as being subject to forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has

been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States, pursuant to Title 21 United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property, including but not limited to the following:

> Lot 2, Block 2, BLUE LAKE ESTATES, an Unrecorded plat, being a part of the Southeast Quarter (SE/4) of Section 13, Township 13 North, Range 6 West of the I.M., Canadian County, Oklahoma, more particularly described with metes and bounds as follows: Commencing at the SE corner of the SE/4 of Section 13, T13N, R6W of the I.M., thence due North along the East line of said SE/4 a distance of 752.00 feet to the point of beginning; thence S 89° 50' 53" W and parallel to the South line of said SE/4, 1075.00 feet; thence due North and parallel to the East line of said SE/4, 202.60 feet; thence N 89° 50' 53" E 1075.00 feet to a point on the East line of said SE/4; thence due South along the East line of said SE/4, 202.60 feet to the point of beginning, also known as Lot 2, Block 2 of the unrecorded plat of Blue Lakes Estates filed in Book 1208, Pages 187 thru 206 and further known as 12509 N. Frisco Road. Roadways are private and not maintained by municipality;
>
> and
>
> Lot 3, Block 2, BLUE LAKE ESTATES, an unrecorded plat, being a part of the Southeast Quarter (SE/4) of Section 13, Township 13 North, Range 6 West of the I.M., Canadian County, Oklahoma, more particularly described with metes and bounds as follows: Commencing at the SE corner of said SE/4 of Section 13, T13N, R6W of the I.M.; thence due North along the East line of said SE/4, 558.00 feet to the point of beginning; thence S 89° 50' 53" W 1170.00; thence N. 26° 03' 40" E 216.24 feet; thence N 89° 50' 53" E. 1075.00 feet to a point on the East line of said SE/4; thence due South along the East line of said SE/4, 194.00

11

feet to the point of beginning, also known as Lot 3, Block 2 of the unrecorded plat of Blue Lakes Estates filed in Book 1208, Pages 187 thru 206 and further known as 12501 N. Frisco Road. Roadways are private and not maintained by municipality;

and

Lot Thirteen (13), in Block Four (4), of Amended plat of all Blocks 1, 2, 3, 4, 5, 6 & 7 Westborough Addition, First Addition, an Addition to Edmond, Oklahoma County, Oklahoma, according to the recorded plat thereof.

**All in violation of Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).**

A TRUE BILL:

*[signature]*
FOREPERSON OF THE GRAND JURY

SANFORD C. COATS
United States Attorney

*[signature]*

SCOTT E. WILLIAMS
Assistant U.S. Attorney