IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br>    Plaintiff, )<br>  )<br>    -vs- )   No. CR-10-43-D<br>  )<br>MEHRAN KORANKI, )<br>  )<br>    Defendant. ) | |

### MOTION IN LIMINE TO EXCLUDE EVIDENCE
### RELATING TO NORTEL'S CIVIL SETTLEMENT

The government moves in limine to exclude evidence relating to a civil settlement between Nortel Networks, Ltd. ("Nortel"), as the plaintiff, and Mehran Koranki and his companies, SMC Electronics, LLC ("SMC") and Allied Solutions Technical Center, LLC ("ASTC"), as the defendants. First, the settlement is inadmissible under Federal Rule of Evidence 408. Second, the irregular nature of the settlement, which precluded Nortel from collecting on a $10 million judgment and from cooperating with law enforcement without formal process, would confuse the jury and waste the Court's time.

I.

FACTUAL BACKGROUND

During 2005 and 2006, Nortel Networks, a Delaware corporation associated with a Canadian multi-national company, sold and serviced

computer networking systems and parts. Like many similar manufacturers, Nortel offered a Professional Service Agreement to companies that used Nortel computer networking equipment. This agreement allowed companies with a defective or malfunctioning Nortel part to request technical assistance from Nortel and, if Nortel could not solve the problem, to receive a replacement part.

The Indictment alleges that during 2005 and 2006, Mr. Koranki defrauded Nortel by causing SMC and ASTC to receive replacement parts to which they were not entitled. SMC's Professional Services Agreement with Nortel, renewed annually at a cost of approximately $7,000, was based on SMC's representation that it needed coverage for only a handful of Nortel parts. In August of 2005, when Nortel began inquiring into SMC's unusually high volume of replacement parts, Mr. Koranki caused ASTC to enter into a similarly minimal Nortel agreement as a "back-up" in case Nortel stopped honoring SMC's agreement. To make this "back-up" effective, he instructed an employee to use the employee's home address and ultimately a false name when dealing with Nortel. At Mr. Koranki's direction, SMC and ASTC contacted Nortel and systematically reported falsely that Nortel parts in their computer networks were malfunctioning. In reality, neither SMC nor ASTC used a Nortel network. After receiving hundreds of these Nortel "replacement" parts at virtually no cost, SMC and ASTC sold them to third

parties as factory refurbished or repaired parts. The Indictment alleges that the scheme yielded $6,260,157.95 in Nortel parts in 2005 and 2006 alone.

After Nortel confirmed its suspicions of fraud in early 2006, it contacted the United States Postal Inspection Service, which executed a search warrant at SMC's Oklahoma City offices on June 13, 2006. On July 24, 2006, Nortel sued Mr. Koranki and his companies in this district. So far as the Court and the public were aware, the case settled shortly before trial for $10 million. *See* Judgment, Doc. 111, *Nortel Networks Limited v. SMC Electronics, LLC, et al.*, No. CIV-06-787-C (W.D. Okla. Aug. 31, 2007). In a separate, unfiled agreement, however, Nortel promised that although it had the right to publicize the $10 million judgment, it would never seek to enforce it. Instead, Nortel agreed to accept $250,000 if paid within sixty days of the settlement and in any event to seek no more than $2,000,000. This agreement also required Nortel to "communicate both verbally and in writing that Nortel no longer has any interest, desire, or intention that any criminal investigation or charges be brought relating to Mehran Koranki or any of the other Defendants in the civil action." Furthermore, although Nortel's counsel would "comply with any subpoenas and/or any other obligations imposed as a matter of law," Nortel would not be allowed otherwise to "participate in any investigation by the U.S. Attorney's Office involving the Defendants."

## II.

## RULE 408 BARS THE INTRODUCTION OF THE SETTLEMENT AGREEMENT.

Rule 408 governs the admissibility of civil settlements not only in civil matters, but also in criminal trials. In 2003, amid uncertainty about whether it applies only in civil proceedings, the Tenth Circuit held that the rule's rationale reaches criminal cases in which a defendant was a party to a related civil settlement. *United States v. Bailey*, 327 F.3d 1131, 1146 (10th Cir. 2003) ("[T]he potential impact of evidence regarding a civil settlement agreement is even more profound in criminal proceedings than it is in civil proceedings."). A 2006 amendment vindicated the Tenth Circuit's construction of the rule. Rule 408(a) now states:

> **Prohibited Uses.** — Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>    (1) furnishing or offering or promising to furnish — or accepting or offering or promising to accept — a valuable consideration in compromising or attempting to compromise the claim; and
>    (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

The rule allows evidence "in a criminal case of statements or conduct during compromise negotiations regarding a civil dispute by a government regulatory, investigative, or enforcement agency." Rule 408 advisory committee notes. But it requires exclusion "[w]hen private parties enter into compromise negotiations." *Id.*

Courts should generally exclude settlements from the trial process because settlement positions are often "inconsistent with the legal and factual positions maintained by the parties." *Alcan Int'l Ltd. v. The S.A. Day Mfg. Co.*, 179 F.R.D. 403, 404 (W.D.N.Y. 1998) (quotation omitted). Excluding settlements prevents a jury from thinking "that offers of compromise . . . have intrinsic evidentiary value," *id.* (quotation omitted), and thus prevents verdicts based on the artificial legal or factual positions that settlement inevitably entails. For the same reasons, a party cannot use the guise of impeachment on cross-examination — here cross-examination of Nortel witnesses in the government's case-in-chief — to escape Rule 408. *E.E.O.C. v. Gear Petroleum, Inc.*, 948 F.2d 1542, 1545 (10th Cir. 1991).

Rule 408 typically protects a party to a civil settlement when the other party to the settlement tries to introduce it. But the rule also allows a party not involved in an earlier settlement to prevent the introduction of statements made by anyone involved in that settlement. For example, in

5

*United States v. Park*, No. CR 08-220 MMM, 2008 WL 2338298 (C.D. Cal. May 27, 2008), the government sought exclusion of a settlement between a bank and a criminal defendant who had defrauded the bank. The defendant, a guarantor for his company's $2 million loan, had lied about a prior bankruptcy in which he used a different identity. In settlement documents in earlier civil litigation, a bank executive had stated not only that the bank might "have made the loan to the Borrower . . . even if it were aware of the Guarantor's previous name and other social security number," but also that "the Bank is uncertain whether any misrepresentations were made by the Guarantor." 2008 WL 2338298, at *2. In the criminal case, the government moved to exclude these settlement statements during the bank executive's cross-examination. *Id.* The district court granted the motion because "the purpose of the rule is not necessarily to protect the party seeking to exclude the evidence, e.g., the government in this case, but rather to protect the parties to the settlement, whether or not they are parties to the present litigation." *Id.* at *6; *see also Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1363 (10th Cir. 1987) ("Rule 408 excludes 'attempted use of a completed compromise of a claim *arising out of the same transaction* between a third person and a party to the suit being litigated.'" (emphasis in original) (quoting 2 Weinstein, *Weinstein's Evidence* § 408[04] at 408-27 (1986))); *Lyondell*

6

*Chemical Co. v. Occidental Chemical Corp.*, 608 F.3d 284, 296-300, 299 (5th Cir. 2010) (collecting cases and applying Rule 408 where a prior settlement among a number of parties shared a "factual nexus" with claims being tried); *Hudspeth v. C.I.R.*, 914 F.2d 1207, 1213 (9th Cir. 1990) ("Rule 408 does apply to situations where the party seeking to introduce evidence of a compromise was not involved in the original compromise.").[1]

Here Nortel made substantial concessions, apparently to win the right to publicize a $10 million judgment as a deterrent against businesses that might try to take similar advantage of a Nortel vulnerability. In addition to

---

[1] These cases are consistent with *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997), which stated that "Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated." In *Towerridge*, a subcontractor sued a prime contractor for payment on a project funded in part by the federal government. To rebut allegations that it had caused delay, the subcontractor offered evidence of the prime contractor's claims against the government based on the government's delay, which were ultimately settled. The Tenth Circuit held that the subcontractor had not used the prior settlement to prove "liability for or invalidity of the claim or its amount." *Id.* (quoting Fed. R. Evid. 408). Indeed, the prime contractor's claims against the government were entirely different from the subcontractor's claims against the prime contractor. *See also Broadcort Capital Corp. v. Summa Medical Corp.*, 972 F.2d 1183, 1194 (10th Cir. 1992) (affirming the admission of "settlement discussions of a different claim related to a prior loan transaction"). Here, by contrast, Nortel's civil claims against Mr. Koranki and his companies were substantially the same as these criminal charges. In contrast to *Towerridge*, allowing the admission of Nortel's settlement concessions would encourage the jury to treat Nortel's settlement statements as equivalent to its actual position on whether Mr. Koranki acted fraudulently.

giving up the right to enforce 97.5% of the public judgment, Nortel agreed that it would do what it could to discourage this criminal prosecution. That settlement position, however, does not necessarily reflect the actual views of Nortel as a whole or particular Nortel employees. (In fact, as the evidence will show, once Nortel understood the nature and scope of the fraud described in the Indictment, it treated Mr. Koranki's actions as crimes and contacted federal law enforcement.) Rule 408 does not allow the defense to use Nortel's settlement concessions to suggest to the jury that it viewed the fraud as relatively minor in scope and unworthy of federal prosecution. Admitting Nortel's decision to head for the sidelines in this criminal case will not assist the jury in deciding whether Mr. Koranki is guilty and, of equal significance, will chill candid settlement efforts and efficient settlement arrangements.

### III.

### THE SETTLEMENT WILL CONFUSE THE JURY.

Evidence of the settlement should also be excluded because it will confuse the jury and waste time. "Even where evidence is not barred under Rule 408, the trial court must still perform a balancing analysis under Rule 403 . . . ." *Southwest Nurseries, LLC v. Florists Mut. Ins., Inc.*, 266 F. Supp. 2d 1253, 1259 (D. Colo. 2003). Under Rule 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury."

Nortel's settlement with Mr. Koranki and his companies would create profound distractions for many jurors. First, jurors might wonder how Nortel could have agreed to receive only $250,000 when it had a judicial pronouncement that the defendants owed it $10 million. Second, jurors might not understand that although Nortel had the authority to resolve its own civil case, it did not have the authority to decide whether this prosecution should go forward. Third, jurors might wonder whether Nortel's civil judgment constituted some sort of punishment that would bar this prosecution under the Double Jeopardy Clause. Finally, jurors might question the propriety of Nortel's interest in publicizing a judgment that would be largely unenforceable. Each of these issues would distract jurors from the issue in this case: whether Mr. Koranki used a commercial interstate carrier to commit fraud and then caused financial transactions over $10,000 with the proceeds of that fraud.

The settlement would also consume unnecessary trial time. As the *Southwest Nurseries* court explained:

> At trial, a party's settlement offer could not be considered in a vacuum, but rather would have to be evaluated in the full context of settlement negotiations. That would necessarily involve testimony explaining negotiation strategies and the thought processes of the settlement participants. The parties might well feel compelled to offer testimony from their respective counsel to explain their settlement strategies and the rationale for any offers or counter-offers.

9

*Southwest Nurseries*, 266 F. Supp. 2d at 1259. If the defense here were allowed to elicit testimony about Nortel's settlement, the government would be obligated to offer evidence of Nortel's reasons for agreeing to various provisions and its understanding of Mr. Koranki's goals in the negotiations. This inquiry would not only tread on protected attorney work product, it would waste the Court's and the jury's time in an exercise far afield from the issues in the case.

## IV.

## CONCLUSION

The government respectfully moves in limine for an order excluding evidence relating to Nortel's settlement with Mr. Koranki and his companies.

Respectfully submitted,

SANFORD C. COATS
United States Attorney

s/SCOTT E. WILLIAMS
SCOTT E. WILLIAMS
Oklahoma Bar No. 17167
AMANDA MAXFIELD GREEN
Oklahoma Bar No. 19876
Assistant U.S. Attorneys
210 W. Park Avenue, Suite 400
Oklahoma City, OK  73102
(405) 553-8700 (office)
(405) 553-8888 (fax)
scott.e.williams@usdoj.gov
amanda.green@usdoj.gov

## CERTIFICATE OF SERVICE

  I hereby certify that on this 12th day of October, 2010, I electronically transmitted the government's Motion In Limine to Exclude Evidence Relating to Nortel's Civil Settlement to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants: Mack K. Martin.

             s/SCOTT E. WILLIAMS
             SCOTT E. WILLIAMS
             Assistant U.S. Attorney